968 F.2d 1218
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ernest TAYLOR, Petitioner-Appellant,
v.
Howard A. PETERS, Respondent-Appellee.
 No. 91-2755.
 United States Court of Appeals, Seventh Circuit.
 Argued May 18, 1992.
Decided July 14, 1992.
 
 Before CUDAHY and MANION, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.*
 
 ORDER
 
 1
 Ernest Taylor appeals the district court's decision to deny his petition for writ of habeas corpus. For the following reasons, we affirm.
 
 
 2
 The following facts are taken from the Illinois Appellate Court's opinion on Taylor's direct appeal, People v. Taylor, 143 Ill.App.3d 252, 492 N.E.2d 1011 (2d Dist.1986), and are presumed correct. See 28 U.S.C. § 2254(d). On December 30, 1984, Taylor walked up to a car in which Susan Wilcox and Eric Lindquist were sitting, pointed a gun at them, and demanded money. When Wilcox attempted to push the gun away, Taylor stuck the gun in her mouth, cutting her lip. Lindquist exited the car and grabbed Taylor, but Lindquist slipped. Taylor then grabbed Wilcox's purse from the car's floor and ran. After Taylor fled, Wilcox and Lindquist flagged down a police officer and reported the robbery. Both described the robber; neither indicated that the robber had facial hair. As it turns out, Taylor wore a thin goatee on the day of the robbery.
 
 
 3
 The day after the robbery, Wilcox and Lindquist each independently chose from an array of photographs a photograph of Taylor as the man who had robbed them. At a lineup held sometime later, Wilcox stated that she was about 80% certain that Taylor was the man who had robbed her. Lindquist narrowed his choice at the lineup to two men, then picked Taylor after some hesitation. Both Wilcox and Lindquist identified Taylor in court.
 
 
 4
 After Wilcox identified Taylor in court, the prosecutor asked her to identify the array of photographs from which she had chosen Taylor's, a series of five "mug shot" photographs. Wilcox then identified Taylor's "mug shot" as the photograph she had previously chosen. Taylor's "mug shot" actually consisted of three photographs of Taylor standing against a height marker with an identification sign around his neck. The wording on the sign was obscured so that it could not be read. Over Taylor's objections, the trial court admitted the series of "mug shots" into evidence.
 
 
 5
 On appeal, Taylor makes three arguments. The first is that the admission of the "mug shots" deprived him of due process. We disagree. The federal courts' power to issue writs of habeas corpus for constitutional violations does not turn every question about the admissibility of evidence in state courts into a federal constitutional question. Otherwise, federal constitutional law would subsume state evidence law, a result the Constitution does not call for and that is at odds with our system of federalism. As we held in United States ex rel. Bleimehl v. Cannon, 525 F.2d 414 (7th Cir.1975), a state court's decision to admit evidence violates the due process clause only if the unfair prejudice from that evidence--its tendency to lead a jury to convict based on something other than the evidence of the crime charged--so greatly outweighs the evidence's probative value that admitting the evidence deprived the defendant of a fair trial. See id. at 420-21; see also United States ex rel. Searcy v. Greer, 768 F.2d 906, 909-10 (7th Cir.1985).
 
 
 6
 The supposed problem with introducing a defendant's mug shot at trial is that the mug shot may raise the inference of past criminal activity because a mug shot generally indicates the defendant has been involved in past criminal conduct. Bleimehl, 525 F.2d at 420. While we assume all that is true, it is of little concern in this case because Taylor testified at trial that he had been convicted twice previously. Any inference of a criminal past from the mug shots became insignificant in light of this admission. Moreover, the mug shots had independent probative value. The mug shots revealed that Taylor had rather dark skin and a rather thin goatee. This helped explain why Wilcox and Lindquist did not notice Taylor's facial hair during the robbery. Taylor's defense--as revealed at the outset of trial in his opening statement--was based in large part on attacking the reliability of Wilcox's and Lindquist's identifications because they had failed to notice any facial hair on their attacker. The state's effort to blunt this defense did not deprive Taylor of due process.
 
 
 7
 Taylor next argues that the state introduced insufficient evidence for a reasonable jury to find him guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). Taylor points to Wilcox's and Lindquist's failure to notice his goatee, and to hesitance and equivocation surrounding some of their identification testimony. But discrepancies like these are for the jury to sort out. Wilcox and Lindquist had ample opportunity to view Taylor from a close distance. Despite some hesitancy, both consistently identified Taylor as the robber. The jury was entitled to find from Wilcox's and Lindquist's testimony that Taylor was the man who robbed them.
 
 
 8
 Taylor finally argues that his 25-year sentence violates the Eighth Amendment because it is disproportionately severe. Although the principle of proportionate sentencing has survived despite the views of Justice Scalia and Chief Justice Rehnquist, see Harmelin v. Michigan, 111 S.Ct. 2680, 2684-2702 (1991), Justice Kennedy's concurring opinion in Harmelin, in which Justices O'Connor and Souter joined, has greatly narrowed that principle. See id. at 2702-09. After Harmelin, a sentence does not violate the Eighth Amendment if it is not grossly disproportionate to the crime committed; there is no need to go further and compare the sentence imposed with sentences imposed for other crimes in the same jurisdiction or the same crimes in other jurisdictions. Id. at 2707.
 
 
 9
 Taylor has a long criminal record, including four adult felony convictions, one other adult conviction, and numerous juvenile violations. See Taylor, 492 N.E.2d at 1015. Although the trial court considered the "relatively non-violent nature of the crime," Taylor pointed his gun at close range and even stuck it in Wilcox's mouth. This was certainly violent enough to easily have resulted in serious injury or even death to Wilcox or Lindquist. If the Supreme Court could uphold sentences of life without parole for possession of 674 grams of cocaine in Harmelin, or 40 years for possession of nine ounces of marijuana in Hutto v. Davis, 454 U.S. 370 (1982), it is absurd to suggest that a 25-year sentence for armed robbery by a defendant with multiple prior convictions is "grossly disproportionate" to the crime charged.
 
 
 10
 AFFIRMED.
 
 
 
 *
 Hon. Floyd R. Gibson, Senior Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation